AO 91 (Rev. 5/85) Criminal Complaint

# United States District Court

DISTRICT OF Massachusetts

UNITED STATES OF AMERICA

V.

Fabian Ruiz, Trevor Teague, Anibal Torres, Christopher Sugar, and Sean Stark

**CRIMINAL COMPLAINT**

CASE NUMBER: 03M-1150-JGD

(Name and Address of Defendant)

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about October 2003 in Middlesex county, in the District of Massachusetts defendant(s) did, (Track Statutory Language of Offense)

in the District of Arizona and elsewhere, did knowingly and intentionally combine, conspire, confederate, and agree with each other to distribute, and to possess with intent to distribute, more than 100 kilograms of marijuana, a Schedule I controlled substance

in violation of Title 21 United States Code, Section(s) 846

I further state that I am a(n) DEA Special Agent and that this complaint is based on the following facts:
Official Title

See Affidavit of DEA Special Agent David X. O'Neill attached hereto and incorporated by reference herein

Continued on the attached sheet and made a part hereof: ☒ Yes ☐ No

_____
Signature of Complainant

Sworn to before me and subscribed in my presence,

10-25-2003 at Boston, MA
Date                                                    City and State

Judith Gail Dein
United States Magistrate Judge
Name & Title of Judicial Officer

_____
Signature of Judicial Officer

This form was electronically produced by Elite Federal Forms, Inc.

03H-1150-JCD

## Affidavit of David X. O'Neill

I, David X. O'Neill, on oath depose and state that:

1. I am a Special Agent with the Drug Enforcement Administration ("DEA") and I have been so employed for over seven (7) years. I have been assigned to DEA's Drug Interdiction Group at Logan International Airport in Boston since January 2003. Prior to that, I was assigned for over six (6) years to DEA's Mobile Enforcement Team. During my career, I have received specialized narcotics training from DEA and I have been involved in hundreds of narcotics investigations and cases, involving heroin, cocaine, marijuana, and other drugs. During these investigations and cases, I have used assistance from cooperating witnesses, electronic surveillance, controlled deliveries of drugs, controlled purchases of drugs, surveillances, and other investigative techniques.

2. I am submitting this affidavit in support of a criminal complaint against (1) Fabian Ruiz, (2) Trevor Teague, (3) Anibal Torres, (4) Christopher Sugar, and (5) Sean Stark for knowingly and intentionally participating in a conspiracy to distribute, and to possess with intent to distribute, marijuana, a Schedule I controlled substance, in Middlesex County, Massachusetts, in the District of Arizona, and elsewhere, in violation of 21 U.S.C. §846. The information contained in this affidavit is based on my personal knowledge gained from my involvement in this investigation, from information provided to me by other DEA agents and other law enforcement officers, and from public records and databases. I have not included all facts known to me but rather only those facts sufficient to establish probable cause for the above crime.

3. I am aware that, on the afternoon of October 22, 2003, Deputy Sheriff Carmelo Crivello of the Phelps County, Missouri Sheriff's Office stopped a 40-foot Freightliner recreational vehicle, bearing VERMONT license plates, for traffic violations on the eastbound side of Interstate Highway 44 in Missouri. Deputy Sheriff Crivello observed the vehicle cross over from a travel lane onto the right shoulder of the highway and then back into the travel lane on three separate occasions in the course of traveling one-half mile. The vehicle was being driven by a male identified as **Christopher Sugar** of Tucson, Arizona. A male passenger was identified as **Sean Stark** of Tucson, Arizona. During conversation about the motor vehicle violations, Sugar stated that the vehicle would swerve to the right whenever it was passed by a tractor-trailer truck. Deputy Sheriff Crivello observed, however, that there had been no such trucks passing the vehicle because he had been driving in the left lane.

4. While Deputy Sheriff Crivello was speaking with Sugar, he was handed a typed note by Stark. The note stated that Stark was given permission by "Robert Ireland" to use the vehicle. It was later determined that the recreational vehicle was registered to Robert L. Ireland of 3214 East President Street in Tucson, Arizona, that the license plates were registered to Roy and Dixie Anderson of another address in Tucson, and that the vehicle had been sold to Robert Ireland in July 2003.

5. Deputy Sheriff Crivello observed that Stark was unusually nervous, that his hands were shaking, and that his voice trembled when he spoke to Deputy Sheriff Crivello. Stark stated that he and his friend were on vacation for two weeks and were traveling to Vermont to ride bikes. Deputy Sheriff Crivello noted that it was a long drive from Arizona to Vermont just to ride bikes.

6. While speaking with Sugar and Stark outside of the vehicle, Deputy Sheriff Crivello observed what appeared to be an antenna to a handheld radio or CB radio on the floor of the vehicle. He observed that when Stark obtained the vehicle's registration from the center console, he moved the antenna further back with his left foot. After climbing onto the first step extending out from the vehicle (while still remaining outside of the vehicle), Deputy Sheriff Crivello observed a green scanner/CB-type radio connected to the antenna.

7. Deputy Sheriff Crivello asked whether they were transporting anything illegal and both replied that they were not. Deputy Sheriff Crivello asked whether they would consent to a search of the vehicle and both replied that they would not.

8. While performing a records check on both persons and while writing out a motor vehicle citation and summons, Deputy Sheriff Crivello requested that another officer arrive with a specially-trained drug detection dog ("Nitro"). Shortly thereafter, the other officer and the dog arrived. The drug detection dog was walked around the exterior of the vehicle and "alerted" to the right rear of the vehicle and continuing along to the front passenger side (right) of the vehicle. The "alert" indicated that the dog had detected the presence of narcotics within the recreational vehicle.

2

9. Deputy Sheriff Crivello and the other officer (now joined by a third officer) then entered the recreational vehicle, searched the interior, and recovered from a locked closet 27 bundles of marijuana wrapped in a cellophane shrink-wrap. Both Stark and Sugar stated that they did not possess a key to the closet and that the closet had been locked from the time they left Arizona. Each bundle had numeric figures written on it corresponding to its weight. The total of the numeric figures was 348.86. The bundles were weighed and were found to have a total weight of 376.9 pounds (over 170 kilograms). Based on his training and experience, and the appearance and smell of the substances contained inside the bundles, Deputy Sheriff Crivello was of the firm opinion that the bundles contained marijuana.

10. Deputy Sheriff Crivello and other officers also observed a container on a bed in the rear of the recreational vehicle. The container contained a Ruger .22 caliber semi-automatic pistol. Stark stated that he was the owner of this handgun.

11. Both Sugar and Stark were arrested on Missouri state narcotics charges. After they were advised of their constitutional rights, and after they indicated they understood their rights, both expressed a willingness to cooperate with law enforcement and to make a controlled delivery of the marijuana to its intended recipient in Massachusetts. The Sheriff's Office contacted DEA in Missouri and DEA Task Force Agents traveled to the area and interviewed Sugar and Stark.

12. On October 23, 2003, after waiving their rights to an immediate appearance in a Missouri state court, Sugar and Stark were driven in the recreational vehicle, with the marijuana, by DEA Task Force Agents to Massachusetts. On October 23 and 24, Stark made multiple consensually-recorded telephone calls to the source for the marijuana in Tucson, Arizona. As set forth below, this source was subsequently identified as **Fabian Ruiz** of Tucson.

13. On October 24, 2003, the recreational vehicle containing the marijuana and Sugar and Stark arrived in Massachusetts and I participated in the debriefings of Sugar and Stark as well as the preparations to make a controlled delivery of the marijuana. I observed the bundles and, based on my training and experience, I am of the firm opinion that the bundles contained marijuana, which is a Schedule I controlled substance.

3

14. I participated in the debriefing of Stark, who stated that **Fabian Ruiz** of Tucson, Arizona was the owner of the marijuana and that he and Sugar were being paid approximately $20,000 by Ruiz to deliver the marijuana to a customer named "Pace" in Massachusetts. Stark stated that he had known Ruiz for a few years, that he had transported other quantities of marijuana for Ruiz to "Pace" in Massachusetts on five prior occasions, and that Ruiz traveled ahead of him on a couple of occasions and met Stark here in Massachusetts. Stark stated that he and Sugar knew there was marijuana inside the recreational vehicle, that he was supposed to deliver it to "Pace" in Massachusetts, and that Ruiz was supposed to meet him in Massachusetts. Stark stated that Ruiz works for a Tucson business owned by Robert Ireland, who is the registered owner of the recreational vehicle.

15. I participated in the debriefing of Sugar, who made statements similar to those of Stark. Sugar stated that he was asked by Stark to take the trip, that he knew there was marijuana inside the vehicle, and that he expected to be paid for making the trip.

16. After Sugar and Stark arrived in Massachusetts, other DEA agents and I had Stark make multiple consensually-recorded telephone calls to Ruiz coordinating the delivery of the marijuana with him. During these conversations, Ruiz indicated that he was in Massachusetts. It was eventually agreed that Sugar and Stark would meet Ruiz in the parking lot of a Holiday Inn in Marlborough (Middlesex County), Massachusetts.

17. Shortly before 4:00 p.m., other DEA surveillance agents and I observed a white Lexus arrive in the parking lot. After the Lexus was parked approximately 100 feet away from the recreational vehicle, Ruiz exited from the front passenger seat of the Lexus and walked over to the recreational vehicle. Shortly after that, the driver of the Lexus and a rear passenger exited from the Lexus and walked over to Ruiz at the recreational vehicle. The rear passenger was subsequently identified as **Trevor Teague** (DOB - 5/19/77) of Tucson, Arizona. The driver was subsequently identified as **Anibal Torres** (DOB - 8/16/69) of Lawrence, Massachusetts. Stark subsequently stated that Torres was the person known to him as "Pace" and to whom he had delivered loads of marijuana on prior occasions.

4

18. After Ruiz attempted unsuccessfully to start the recreational vehicle and after a conversation among Ruiz, Teague, and Torres, Ruiz decided to unload the recreational vehicle there. Torres returned to the white Lexus and drove it over to the recreational vehicle. Torres parked the Lexus adjacent to the recreational vehicle in such a manner so that the trunk of the Lexus was closest to the side door of the recreational vehicle. I am aware that Torres is the registered owner of the white Lexus.

19. Shortly after that, other DEA agents and I approached the recreational vehicle as Ruiz, Teague, and Torres were in the process of transferring the 27 bundles of marijuana from the recreational vehicle into the trunk of the Lexus. The three men were passing the bundles to each other in a line from the interior of the recreational vehicle to the trunk of the Lexus. As we approached, another DEA agent observed Torres outside of the recreational vehicle loading a bundle of marijuana into the trunk of the Lexus. Ruiz was observed outside the recreational vehicle with a bundle of marijuana in his arms; as Ruiz observed us approaching, he threw the bundle back into the recreational vehicle. Teague was observed standing inside the recreational vehicle with a bundle of marijuana at his feet, approximately 8 feet from the center door. The closet door was open and bundles of marijuana had been removed from the closet. Other DEA agents and I observed several bundles of marijuana inside the trunk of the Lexus.

20. After we arrived in the area, other DEA agents and I placed Ruiz, Teague, and Torres under arrest. They were subsequently advised of their constitutional rights. Torres stated that he had picked up Ruiz and Teague in Lowell the night before, that they had spent the night at his residence in Lawrence, and that he was supposed to make approximately $5,000 for his involvement in transporting the marijuana within Massachusetts.

21. I am aware that Ruiz was arrested in Crawford County, Arkansas in February 2003 and charged with a marijuana offense. Stark stated to me that Teague worked for Ruiz and that Teague was also arrested with Ruiz in Arkansas on a marijuana case.

22. Based on my training and experience, I am of the opinion that this quantity of marijuana, coupled with the manner in which it was packaged, is consistent with distribution and not personal use. I believe that this marijuana is worth in excess of $300,000 since marijuana is commonly sold in this area for $1,000 per pound.

5

23. Based on the foregoing, I submit that there is probable cause to believe that Fabian Ruiz, Trevor Teague, Anibal Torres, Christopher Sugar, and Sean Stark knowingly and intentionally conspired with each other to distribute, and to possess with intent to distribute, marijuana, in violation of 21 U.S.C. §846, in the District of Massachusetts, the District of Arizona, and elsewhere.

_____
David X. O'Neill
DEA Special Agent

Sworn to and subscribed before me this 25th day of October 2003.

_____
Judith Gail Dein
United States Magistrate Judge