UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Criminal No. 03-CR-10362 (PBS) |
| ) | |
| V. ) | |
| CHRISTOPHER SUGAR, ) | |
| SEAN D. STARK, ) | |
| TREVOR ROYCE TEAGUE, ) | **ORIGINAL** |
| ANIBAL TORRES, ) | |
|     a/k/a PACE; and ) | |
| FABIAN A. RUIZ, ) | |
| ) | |

## GOVERNMENT'S OPPOSITION TO DEFENDANTS STARK AND SUGAR'S MOTIONS TO SUPPRESS

### INTRODUCTION

The United States of America, by its attorney, Michael J. Sullivan, United States Attorney for the District of Massachusetts, respectfully submits this memorandum in opposition to two motions: (1) defendant Christopher Sugar's Motion to Suppress Evidence ("Sugar Motion") and (2) defendant Sean D. Stark's Motion to Suppress and Request Hearing ("Stark Motion").

Both Sugar and Stark assert Fourth Amendment violations and seek to suppress the marijuana seized in a locked closet during an October 22, 2003, stop of a recreational vehicle ("RV")[1]. As

---

[1] Stark contends that the "only evidence in this matter was the contraband seized from the RV", apparently referring to the marijuana found in the locked closet and the gun found elsewhere in the RV. (Stark Motion, p. 2). Since the defendants were only charged with the marijuana, we focus in this opposition on the marijuana although the arguments apply to the gun as well. Defendant Stark also contests any "fruit" of this alleged search and arrest. Stark fails to articulate what this "fruit" of the

1

a preliminary and dispositive matter, the defendants have no "standing" under the Fourth Amendment to move to suppress the marijuana found in a locked closet to which defendants admit they had no key and in an RV that they admit they did not own.

## BACKGROUND

### PROCEDURAL BACKGROUND

Stark and Sugar were arrested on October 22, 2003 for driving an RV in Missouri with 376 pounds of marijuana in the locked closet of this RV that they had borrowed. Stark and Sugar agreed to cooperate with authorities and agreed to complete the delivery of marijuana to its intended destination in Massachusetts. Stark and Sugar delivered the RV containing the marijuana to their three co-defendants Trevor Royce Teague, Anibal Torres, and Fabian A. Ruiz in Massachusetts on October 24, 2003. At that time, these three co-defendants were also arrested. The five defendants were then indicted by a Federal Grand Jury on December 3, 2003 on charges of Conspiracy to Distribute Marijuana, in violation of 21 U.S.C. § 846, Possession of Marijuana with Intent to Distribute, in violation of 21 U.S.C. § 841(a)(1), and Aiding and Abetting, in violation of 18 U.S.C. §

---

search is and the basis for its suppression. Stark only addresses the physical evidence in this case, being the contraband. Thus, we only address the contraband seized in the RV and reserve the right to supplement this opposition should Stark satisfy his burden and identify any additional "fruit" of the search and the basis for its suppression.

2.

## FACTUAL BACKGROUND

On October 22, 2003, at approximately 12:33 p.m, Phelps County Deputy Sheriff Carmen Crivello saw a large recreational vehicle ("RV") traveling eastbound on Interstate 44 approaching mile marker 183 in Rolla, Missouri. (Deputy Aff., attached as Exh. A, ¶3). Deputy Crivello followed the RV for approximately 1/2 mile during which time he observed the RV cross over into the right shoulder three (3) times. (Id.) He noticed that the RV had a Vermont license plate. (Id.) On the third violation, Deputy Crivello saw the right rear double tire completely cross over into the shoulder before the driver corrected himself. (Id.) Deputy Crivello then initiated a traffic stop on the RV. (Id.)

Deputy Crivello approached the driver's side and told the driver, identified as Christopher Sugar, that he stopped Sugar for crossing over into the shoulder. (Id. at ¶4). Sugar gave Deputy Crivello his license and Stark handed Deputy Crivello a typed note from owner Robert Ireland, indicating that Sean Stark was given permission to use the RV. (Id.) Deputy Crivello noticed that Mr. Stark was unusually nervous, as his voice trembled when he spoke and his hands were shaking. (Id. at ¶5) Mr. Stark stated that he and his friend were on vacation for two weeks and going to Vermont just to ride bikes. (Id.) Stark

provided to Deputy Crivello with an Arizona driver's license. (Id.) Deputy Crivello briefly joked with both subjects about the long drive from Arizona to Vermont just to ride bikes. (Id.) During this brief conversation, Deputy Crivello noticed what appeared to be an antenna to a hand held radio or CB on the floor. (Id.) Deputy Crivello asked Mr. Stark for the registration and as he pulled out the center console, his left foot moved the antenna further back. (Id.) Mr. Stark appeared to do this to hide the fact that they had a radio or CB. (Id.)

Deputy Crivello asked both defendants if they were transporting anything illegal and both stated no. (Id. at ¶ 6) Deputy Crivello asked them if they would allow me to search the RV and both denied consent. (Id.) Deputy Crivello then informed them that he was going to have the canine come to respond to the scene while he wrote them a summons for the traffic violation. (Id.)

Deputy Crivello asked Sugar to return to the patrol unit where Crivello conducted a check on both subjects. (Id. at ¶ 7) Deputy Crivello left Mr. Stark at the RV. (Id.) Deputy Crivello contacted Sheriff Blankenship and requested that he respond with his canine. (Id.) While Sugar and Deputy Crivello were seated in the patrol unit and while Deputy Crivello was still conducting the license check on both subjects, Stark approached the passenger side of the patrol car where he asked Deputy Crivello a

4

number of questions. (Id.) He asked Deputy Crivello if Crivello stopped him because they were two kids driving an RV. (Id.) Deputy Crivello responded that at their age (licenses showed they were late 20s and early 30s) they were not really kids. (Id.)

Stark's questions also included whether he and Sugar had to remain there. (Id.) Deputy Crivello explained that he was waiting for the canine unit to respond and specifically told Sugar and Stark that they were "free to go." (Id.) Deputy Crivello also stated that if they wanted to leave, they could walk to the hotels or restaurants. (Id.) There were hotels and restaurants within plain sight only a couple of hundred feet away over a stretch of grass. (Id.) Defendants could easily have walked to these establishments in a couple of minutes without having to cross any traffic. (Id.) Defendants did not choose to leave and continued to remain and talk with Deputy Crivello. (Id.)

The records check came back clean. (Id. at 8). The RV was registered to Robert L. Ireland in Tucson, Arizona. (Id.) The canine unit arrived about 15-20 minutes after Deputy Crivello initially stopped the RV for the traffic violation. (Id.) As is the usual custom, the canine was first walked to relieve itself. (Id.) The canine then walked around the RV approximately one time and then alerted on the right rear and continued to alert as the canine approached the front of the passenger side, the side

of the locked closet that Crivello discovered during the subsequent search of the RV. (Id.) Deputy Crivello asked Stark and Sugar if they had the key to this locked closet. (Id.) They stated that they did not have a key and that the closet had been locked from the time they left. (Id.)

Detective Hope manipulated the door lock to the closet without causing damage to the door. (Id. at ¶ 9) After the door was opened, the police saw numerous bundles of what appeared to be marijuana stacked in the closet. (Id.) It was later determined that there were 27 bundles of marijuana, weighing a total of 376.9 pounds, found in the closet. (Id.) Mr. Stark and Mr. Sugar were then placed under arrest. (Id. at 10) Deputy Crivello also issued Mr. Sugar Summons #020210187 for the lane violation. (Id.)

ARGUMENT

**DEFENDANTS HAVE FAILED IN THEIR BURDEN TO DEMONSTRATE THAT THEIR FOURTH AMENDMENT RIGHTS WERE VIOLATED**

The Supreme Court has clearly stated that "[t]he proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure." United States v. Bouffard, 917 F.2d 673, 675-76 (1st Cir. 1990) (citing Rakas v. Illinois, 439 U.S. 128, 131 (1990)). The defendants have failed to satisfy this burden as set forth below.

Case 1:03-cr-10362-PBS     Document 61     Filed 04/14/2004     Page 7 of 16

## A. Defendants Have No "Standing"

Defendants have failed to demonstrate, nor could they, that they have "standing" to move to suppress the marijuana found in an RV they did not own, and in a locked closet to which the defendants admit they had no key. Defendant Sugar does not even attempt to assert that he has "standing"[2] to contest the seizure of contraband.

> [T]he [Fourth] [A]mendment's prohibition against unreasonable searches and seizures extends only to protect those places and interest in which the accused can be characterized as having a legitimate expectation of privacy. . . . Demonstration of such an expectation is a threshold standing requirement, and analysis cannot proceed further without its establishment. . . . The burden of persuasion is unquestionably upon the defendant.

United States v. Cruz Jimenez, 894 F.2d 1, 5 (1st Cir. 1990). Thus, if defendants have no expectation of privacy in the locked closet of the RV, it is "unnecessary" to even address the merits of the search. See Rakas, 439 U.S. at 148-150.

Stark's contention that he had a note from the owner permitting him to use the vehicle and had some unspecified "long term interest" in the RV, presumably to make the trip from

---

[2] "Notwithstanding a certain reluctance in legal circles to relinquish familiar rubrics with convenient labels, "standing" no longer can connote a legitimate expectation of privacy in the evidence seized or the premises searched. Rather, after Rakas and Rawlings it is incumbent upon the defendant to establish not only unlawful conduct, but that the unlawful conduct intruded upon some legitimate expectation of privacy on the part of the defendant who challenges it." Bouffard, 917 F.2d at 675.

7

Arizona to Vermont and back, is unavailing. The Supreme Court concluded in <u>Rakas</u> that "legitimate presence" was insufficient to demonstrate that an individual's Fourth Amendment rights had been violated. <u>See</u> 439 U.S. at 148. <u>Rakas</u> is controlling here, as the facts are virtually identical to the instant case.

In <u>Rakas</u>, the petitioners were passengers in an automobile at the time it was stopped as a suspected getaway car. A search of the glove compartment and under the passenger seat revealed a rifle and ammunition. 439 U.S. at 130. The petitioners were legitimately in the car with the owner's permission. <u>Id.</u> at 148. Yet, the Supreme Court held that the petitioners' claims failed since they had no legitimate expectation of privacy in the glove compartment or in the area under the passenger seat of the car. <u>See id.</u> The Supreme Court went even further in its holding to state that the petitioners' claim would fail in an analogous situation involving a house or apartment, places which have often been held to have greater privacy expectations than a car. <u>See id.</u> Similarly, if this case was analogized to a house in which Sugar and Stark were legitimate guests, they would still have no legitimate expectation to privacy in a locked closet to which they had no key and which had been locked their entire stay.

Here Stark and Sugar certainly had even less, if any, expectation of privacy than the defendants did in <u>Rakas</u>. It is clear than one has less expectation of privacy in a locked closet

8

than in an unlocked glove compartment and in an open space under a passenger seat as was the case in Rakas.

Sugar and Stark have not asserted any ownership or "proprietary" interest in the RV or in the marijuana seized to support any legitimate expectation of privacy that has been violated. See also United States v. Bouffard, 917 F.2d 673, 676 (1st Cir. 1990) (holding defendant had no legitimate expectation of privacy in trunk of borrowed car); United States v. Soule, 908 F.2d 1032, 1036 (1st Cir. 1990) (holding defendant had no legitimate expectation of privacy in pick-up owned by another even though defendant had been present with owner's consent); Rawlings v. Kentucky, 448 U.S. 98 (1980) (holding no legitimate expectation of privacy in pills held in friend's purse).

Stark admitted that he "did not have the key to the closet and that it was closed since [they] had left Arizona." (Stark Aff., ¶16). Sugar also admitted that he "never possessed a key to the RV closet" and that the RV was merely "borrowed." (Sugar Aff., ¶2, 14). Even assuming arguendo, that defendants could show that they had a legitimate privacy interest in the RV generally, they clearly did not have any such interest in the locked closet. They could exercise no control over this area, having no key and it having been locked the entire trip by their own admissions. It is beyond question that they had no "legitimate" expectation of privacy in an area which they could

not even access.

Thus, defendants have no "standing" to move to suppress the evidence in this case, specifically the marijuana found in the locked closet of the RV for which they are currently charged in the pending indictment. Defendants' motions to suppress should summarily be denied.

### B. Defendants Have Not Made a Sufficient Showing to Require an Evidentiary Hearing

"Evidentiary hearings on motions to suppress are required only where a defendant makes a sufficient showing. . . . The burden is on the defendant to allege facts 'sufficiently definite, specific, detailed, and non conjectural, to enable the court to conclude that a substantial claim is presented.'" United States v. Calderon, 77 F.3d 6, 9 (1st Cir. 1996) (citing United States v. Lewis, 40 F.3d 1325, 1332 (1st Cir. 1994) (holding no hearing was required as defendants' affidavits in support of motion to suppress did not allege facts that were sufficiently definite, specific, detailed and thus the factual matters were essentially uncontested)).

Defendants have provided no affidavit or documents sufficient to demonstrate their "standing." Defendant Sugar does not even assert that he has "standing" under the Fourth Amendment to move to suppress the evidence in this case. Thus, the Sugar Motion can be summarily denied as a matter of law.

Defendant Stark concedes that he had no key to the locked

closet containing the marijuana and that the closet had been closed the entire trip. (See Stark Aff., ¶16). Thus, no evidentiary hearing is required to decide the Stark Motion either, since this should also be summarily denied as a matter of law for lack of standing.

    C.    **Assuming, *Arguendo*, that Defendants Have "Standing" Under the Fourth Amendment, the Terry Stop and Brief Investigatory Detention Was Valid Under the Fourth Amendment**

Assuming, *arguendo*, that defendants can demonstrate that they had a legitimate expectation of privacy in the locked closet of the RV they did not own, we now proceed to the merits of the traffic stop. The traffic stop was valid and the brief subsequent investigatory detention was reasonable; thus the Fourth Amendment inquiry is satisfied. See Ohio v. Robinette, 519 U.S. 33, 38-40 (1996). In Terry v. Ohio, 392 U.S. 1, 26 (1968), the Supreme Court held - and the defendants concede - that an investigatory detention, a brief seizure by police based on reasonable suspicion of criminal activity, is an exception to the probable cause requirement of the Fourth Amendment. (See Stark Mem. p. 4; Sugar Mem. p. 2). Based on reasonable suspicion, police may detain a person to ascertain his or her identity. See id. at 6-7, 22-23 (brief questioning during investigatory stop permitted to establish identity and dispel reasonable suspicion of imminent criminal activity). Police may also order passengers out of a vehicle they have lawfully

11

detained, whether or not the police have reasonable suspicion that the occupants have engaged in criminal activity. See Ohio v. Robinette, 519 U.S. 33, 38 (1996) (holding since there was probable cause to stop defendant for speeding, deputy was "objectively justified" in asking driver out of the car, "subjective thoughts notwithstanding"); see also Pennsylvania v. Mimms, 434 U.S. 106, 111 (1977)(holding that police ordering defendant out of automobile after traffic violation stop was reasonable and permissible under Fourth Amendment).

i.  **There Was Probable Cause[3] that a Traffic Violation Occurred**

Defendant Sugar disavows the commission of any traffic violation on October 22, 2003, because, having seen a police car following behind him, he alleges that he was taking extra care not to commit any violations. That avowed intent is contradicted by the Deputy Sheriff's recorded observations that Sugar committed not just one violation -- but _three_ traffic violations in the one-half mile that Deputy Sheriff Crivello followed the

---

[3]While the Supreme Court used "probable cause" language to justify the vehicle stop in Whren, a vehicle stop generally may be justified by the lower standard of "reasonable suspicion" under Terry v. Ohio, 392 U.S. 1 (1968). See, United States v. Lopez Soto, 205 F.3d 1101, 1104-05 (9th Cir. 2000)(no Courts of Appeals, before or after Whren, concluded that traffic stop requires any more than "reasonable suspicion"); see also, United States v. Gregory, 79 F.3d 973, 977-78 (10th Cir. 1996)(applying Terry standard to evaluate traffic stop where truck weaved into emergency lane). Nevertheless, the Government contends that whichever standard this court applies, that standard is met on the facts in this case.

RV. Deputy Sheriff Crivello observed the RV cross over into the right shoulder three times. (Deputy Aff., Exh. A., ¶3). On the third violation, Deputy Crivello saw the right rear double tire completely cross over into the shoulder before the driver corrected himself. (Id.). Thus, there was probable cause that a traffic violation had occurred and Deputy Crivello's stop of the RV was proper under the Fourth Amendment.

### ii. Deputy's Subjective Intentions Are Irrelevant Under a Fourth Amendment Analysis

Defendants take great effort to complain of a Fourth Amendment violation because the traffic stop was a "pretext" for what was really a narcotics inquiry. The law is settled that a stop is proper regardless of any ulterior motive, even if the traffic offense is minor and the stop was merely a pretext to investigate other crimes such as narcotics trafficking. See Robinette, 519 U.S. at 38; see also Whren v. United States, 517 U.S. 806, 810-813 (1996) ("we flatly dismissed the idea that an ulterior motive might serve to strip the agents of their legal justification"). As the Supreme Court has held:

> we made clear in Whren, the fact that [an] officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action . . . Subjective intentions play no role in ordinary, probable cause Fourth Amendment analysis.

Robinette, 519 U.S. at 38 (citation omitted). Thus, since there was probable cause that a traffic violation occurred, whether

this was a "pretext" for a narcotics inquiry is irrelevant under the Fourth Amendment and does not detract from the legality of the traffic stop.

### iii. The Subsequent Brief Investigatory Detention was Reasonable

Since there was probable cause that a traffic violation had occurred as discussed, the next inquiry is whether subsequent action by Deputy Crivello was "reasonable" to satisfy the Fourth Amendment, which it clearly was. See Robinette, 519 U.S. at 39. Deputy Crivello had only received the defendants' licenses, registrations, and asked and answered several questions before he asked Sugar to accompany him to his patrol unit to run a records check. Defendants raise issue with the fact that Deputy Crivello told the defendants that he was going to call the canine, which he did, and asked the defendants for consent, which they refused and Deputy Crivello respected and did not bring up again. Deputy Crivello's actions were entirely reasonable, as the defendants had told Deputy Carmello a suspicious cover story about how they were driving from Arizona to Vermont just to ride bikes, Stark looked unusually nervous, his voice and hands trembled, and Stark attempted to hide the CB radio. Moreover, Deputy Crivello had not unnecessarily delayed in calling in for the records check and the canine. Having initiated the records checks on the car and defendants in a prompt manner, Deputy Carmelo reasonably awaited the results to verify the identification and criminal history of

14

the defendants. See <u>United States v. Owen</u>, 167 F.3d 739, 749 (1st Cir. 1999) (holding police had initiated a number of computer checks on the car and its occupants and reasonably awaited the results).

Furthermore, while Deputy Sheriff Crivello was still running records checks pursuant to the valid traffic stop, Stark walked over to the police car and asked Deputy Crivello a number of questions, including whether they had to stay. (See Deputy Aff., ¶7) Deputy Crivello told the defendants that they were "free to go." (<u>Id.</u>) Deputy Crivello even elaborated, stating that if they wanted to, they could walk to the hotels or restaurants. (<u>Id.</u>) There were hotels and restaurants within plain sight only a couple of hundred feet away over a stretch of grass. (<u>Id.</u>) Defendants could easily have walked to these establishments in a couple of minutes without having to cross any traffic. (<u>Id.</u>)

Thus, before the traffic stop was even finished, Deputy Crivello told them they were "free to go." Defendants were therefore clearly not detained in any way beyond this point in time and no violation of their Fourth Amendment rights could have occurred after this point. Defendants have presented no reason that prevented them from leaving after Deputy Crivello told them they were "free to go." There is no allegation that Deputy Crivello's actions or tone prevented them from taking his offer to leave. This is supported by the fact that Stark was left by

15

himself at the RV when Deputy Crivello and Sugar went to the patrol car to run the records check. Stark certainly felt free enough to leave the RV, approach the patrol unit, and then pepper Deputy Crivello with questions, during which time Crivello told defendants that they were "free to go."

The time frame between the initial stop and when defendants were told they were "free to go" was brief and reasonable under the circumstances. In all, the entire time between the initial traffic stop and the arrival of the canine was only 15-20 minutes. Stark himself admits that this delay "was not as long as in other cases where seizures have been ruled reasonable." (Stark Mem, p. 10.)[4].

## CONCLUSION

For the reasons set forth above, the government respectfully requests that the Court summarily deny the defendants' Motions to Suppress.

Dated: April 14, 2004

I hereby certify that a true copy of the above document was served upon (each party appearing pro se and) the attorney of record for each other party by mail on
Stark & Sugar
4/14/03
Assistant U.S. Attorney

Respectfully submitted,
MICHAEL J. SULLIVAN
United States Attorney
By:

_____
Cynthia W. Lie
Assistant U.S. Attorney

---

[4] Should the Court decide that the defendants have "standing" and that the stop was not valid or that the brief investigatory detention was not reasonable, and if the Court decides that the stop was a de facto arrest, the government reserves the right to supplement this filing.