

U.S. Department of Justice

**Michael J. Sullivan**
United States Attorney
District of Massachusetts

---

Main Reception: (617) 748-3100
Courthouse

John Joseph Moakley United States

1 Courthouse Way
Suite 9200
Boston, Massachusetts  02210

May 12, 2004

**VIA FEDEX (with encl.) AND FACSIMILE (w/o encl.)**
Mark Shea, Esq.
47 Third Street
Cambridge, MA 02141

Re: United States v. Sugar et al - 03-CR-10362 (PBS)

Dear Mr. Shea:

I write in response to your discovery letter requests dated May 3rd, May 4th, May 5th, and May 6th, 2004. In the first letter, you stated that you have only received two pages of discovery. I assume you are only referring to the canine materials, as you and the other counsel have already received documents Bates numbers 1 through 329. Please let me know forthwith if this is not the case. Although we do not believe that the enclosed are discoverable at this time, in response to your recent discovery requests, enclosed are documents Bates numbers 330-385.

As you know, your current motion to suppress is based on the traffic stop that led to the discovery of over 300 kilograms of marijuana in a borrowed RV, which your client, Sugar, was driving. According to Deputy Crivello, Sugar committed three traffic violations before he was pulled over. The marijuana was found in this RV, which Sugar admits that he did not own and in a closet to which Sugar admits he did not have the key. Thus, the main issue for the upcoming hearing on this motion is whether Sugar had a Fourth Amendment right to privacy such that he can even have "standing" to move to suppress the marijuana. Your current motion does not address any canine training issues, but only addresses the initial traffic stop based on a traffic violation.

I have also received no report of Dr. Myers to date, only a CV containing general descriptions of his experience with no description of what he would testify to regarding this case. The government has not received any reciprocal discovery from you to date other than the Myers' CV. Please send me any reciprocal discovery forthwith.

Counsel in United States v. Sugar
May 12, 2004
Page 2


However, I have discussed your additional canine requests with Sheriff Blankenship, the handler of the canine at issue, and he has conveyed the following responses to the best of his knowledge:

## I. MAY 3 AND MAY 4, 2004 DISCOVERY LETTER RESPONSES

### (1a-c) Training Records

As set forth in my previous response to your request, the government has no written training records, other than the Certificate of Basic Police Canine Introductory Narcotics Detection Course for the Sheriff and canine that was previously produced to you, nor does the government have any other records or documentation responsive to a-c. Nitro was formally trained at a private institution, Lead Canine in Lincoln, Arkansas, which closed in 2003, and Lead Canine has not retained any records from the training. Sheriff Blankenship stated to me that he has also had handler training at a private kennel, Hornbeck Kennels in Springfield, Missouri but that he does not have any records from this training. However, Sheriff Blankenship has stated that Nitro is a reliable and well-trained canine in his experience.

d) The government has no documentation identifying the final response Nitro was trained to make upon finding drugs. However, the Sheriff has stated to me that Nitro was initially trained at Lead Canine to sit as a final response but has now been trained by the Sheriff to sit and bark as a final response.

e) The government has no documentation identifying Nitro's primary reward. However, the Sheriff has stated to me that a piece of thin plastic, such as PVC pipe, is currently Nitro's primary reward.

f) The government has no documentation regarding the specific training aids used to train Nitro, specifically the chemical composition, purity and packaging of the controlled substance. However, the Sheriff has stated to me that Nitro was trained using towels scented with drug smells including marijuana, cocaine, methamphetamine and heroin.

### K-9 TRAINING

Counsel in United States v. Sugar
May 12, 2004
Page 3

Additional Response to (a-f):

Although the government has complied with your requests and produced all information regarding Nitro's training, the canine's sniff was accurate in that the DEA laboratory determined that the bundles found in the closet of the RV contained marijuana, over 300 kilograms of marijuana, in fact, as set forth in the DEA laboratory report and other DEA reports already produced to you. There have been no oral or written complaints about Nitro's reliability to date and no indication that he was unreliable in the instant case.

Furthermore, federal law is clear that an alert from a trained and certified narcotics dog establishes probable cause to search. See, e.g., United States v. de los Santos Ferrer, 999 F.2d 7, 10 (1st Cir. 1993); United States v. Maldonado-Espinosa, 767 F. Supp. 1176, 1188 (D. P.R. 1991), aff'd, 968 F.2d 101 (1st Cir. 1992). Indeed, simply reciting that a dog is "trained" may by itself permit the inference that the dog "had attained a high degree of proficiency in detecting the scent of narcotics." United States v. Meyer, 536 F.2d 963, 966 (1st Cir. 1976).

Nitro has in fact been certified as evidenced by the certificate already produced to you. Since this letter has described his training and since no complaints, either written or oral, have been made regarding Nitro's reliability, the information you seek is meaningless even if the government had such documents in its possession and you could somehow get passed the "standing" issues set forth above. See also United States v. Owens, 167 F.3d 739, 749 (1st Cir.), cert. denied, 528 U.S. 894 (1999) (affirming District Court's conclusion that dog, who was certified at the time of the questioned stop, was reliable, despite fact that dog had failed to pass two earlier certification tests); U.S. v. Sklar, 721 F.Supp. 7, 12 (D. Mass 1989)(Ponsor, M.J.) (rejecting claim that affidavit had to describe K-9's training and performance in detail to establish probable cause to search); United States v. Gonzalez Acosta, 989 F.3d 384 (10th Cir. 1993)(defendant not entitled to production of entire K-9 training file).

g-k) Requests For Departmental or Organizational Policies, Rules, Directives, Memoranda and Operating Procedures:

The government has no records of the departmental or organizational policies, rules, directives, memoranda and

Counsel in United States v. Sugar
May 12, 2004
Page 4

operating procedures requested or other records requested in g-k.

**MATERIALITY**

Although we have responded to g-k, the government generally objects to your requests for any internal memos you may be requesting concerning departmental or organizational policies, rules, directives, memoranda, and operating procedures. The government objects to these types of requests, as they do not fall within the range of permissible discovery under Rule 16. The government also objects to the overbroad nature of your requests, many of which specifically ask for information concerning other cases not connected in any way to the instant case. These requests have also not met the materiality requirement of Rule 16.

Rule 16(a)(1)(C) states that the government shall permit the defendant to inspect and copy materials "which are within the possession, custody or control of the government, and which are **material to the preparation of the defendant's defense** or are intended for use by the government as evidence in chief at the trial, or were obtained from or belong to the defendant." Courts are clear that documents are "material" if there is a "strong indication" that they will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment and rebuttal. United States v. LaRouche Campaign, 695 F.Supp. 1290, 1306 (D.Mass 1988). Defendant must make a "prima facie showing of materiality" to be discoverable under FRCP Rule 16. United States v. Pedro Carrasquillo-Plaza, 873 F.2d 10, 12 (1st Cir. 1989). A blanket request is insufficient. See Id. at 13; See also United States v. Cadet, 727 F.2d 1453, 1466 (9th Cir. 1984) ("A general description of the materials sought or a conclusory argument as to their materiality is insufficient to satisfy the requirements of Rule 16(a)(1)(C)"). See E.g., U.S. v. Lloyd, 992 F.2d 348, 350 (D.D.C. 1993) (To show materiality under Rule 16, a "defendant must demonstrate that the requested evidence bears some abstract logical relationship to the issues in the case.... There must be some indication that the pretrial disclosure of the disputed evidence would [enable] the defendant significantly to alter the quantum of proof in his favor"). See generally United States v. Rosario-Peralta, 175 F.3d 48 (1st Cir. 1999) ("Information is 'material' if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different").

Counsel in United States v. Sugar
May 12, 2004
Page 5

> The documents at issue must "play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony or assisting impeachment or rebuttal.".... When analyzing materiality, a court should focus first on the indictment which sets out the issues to which the defendant's theory of the case must respond....An "abstract logical relationship to the issues in the case" is not, however, sufficient to force the production of discovery under Rule 16....Materiality is, to some degree, a sliding scale; when the requested documents are only tangentially relevant, the court may consider other factors, such as the burden on the government that production would entail or the national security interests at stake, in deciding the issue materiality.... It may also be relevant that the defendant can obtain the desired information from other sources.

United States v. George, 786 F.Supp. 56, 58-59 (D.D.C. 1992).

**INTERNAL MEMORANDA**

Even could you satisfy this "materiality" requirement, Rule 16 still prohibits production of the documents you seek in (g-k) and below. Rule 16(a)(2) specifically exempts internal government documents from disclosure in criminal cases and Courts have regularly enforced the rule in accordance with its terms. See United States v. Hill, 189 F.R.D. 14, 16 (D. Mass. 1999)(Collings, U.S.M.)(Rule 16 "... does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by the attorney for the government or any other government agent investigating or prosecuting the case"); United States v. Elife, 43 F.R.D. 23, 24 (S.D.N.Y. 1967)("Rule 16 does not allow the pre-trial discovery of internal government documents or memoranda").

**(2a-c) Incident reports:**

As stated to you previously, there are no reports of written complaints or oral complaints concerning the use of Nitro with the Sheriff. As to your broader requests for the following:

    **(a) Any and all reports or documentation describing the**

5

Counsel in United States v. Sugar
May 12, 2004
Page 6

number of occasions where deputies stopped vehicles on the highways or other public ways for alleged traffic violations and "Nitro" was used to obtain probable cause for a search of the vehicle.

    (b) Any and all reports or documentation regarding incidents where Sheriff Blankenship and "Nitro" were used to investigate a suspected crime.

    (c) Any and all videotapes depicting traffic stops in which the canine unit known as "Nitro" was used, for the dates January 1, 2003 to the present.

(a-c) The government has produced all reports, documentation, or videos concerning the traffic stop and dog sniff at issue and you do not dispute this fact. You now request all reports or documentation concerning Nitro that are <u>not related</u> to this traffic stop from the beginning of Nitro's use until the present. The government objects to this request as seeking information that is not currently subject to disclosure under Fed. R. Crim. P. 16 and Rules 116.1(C) and 116.2 of the Local Rules of the United States District Court for the District of Massachusetts, and declines to comply with this request at this time. The government objects to these requests as clearly over-broad, immaterial and not relevant, as set forth above in the Materiality Section.

    As stated before, there have been no complaints concerning Nitro's reliability, written or oral, and you have failed to articulate any materiality for the Nitro and Phelps County information requested concerning other cases. Nitro's "hit" in the instant case was indeed accurate in that DEA found over 300 kilograms of marijuana in the closet of the RV. Moreover, Phelps County Sheriff's Office does not collect or compile this data, so the government objects to this request as burdensome to Phelps County Sheriff's Department as they would have to review each any every report of every crime or misdemeanor committed for the past four and a half years that Nitro has been on the job. <u>See e.g.</u> United States v. Wilkerson, 189 F.R.D. 14, 16 (D.Mass. 1999) (denying defendant's request for all written records and documentation relating to specimen processing and complete technical procedures relating to all tests conducted on the specimens); <u>United States v. Gaertner</u>, 519 F.Supp. 585, 594 (E.D. Wis. 1981) (denying defendant's request for results performed by chemist in other cases because they fail the materiality

Counsel in United States v. Sugar
May 12, 2004
Page 7

requirement and are not within ambit of Rule 16).

### (3) Ancillary Use Reports

As you stated, I have responded that there are none because there are none. You refine the request by stating the following:

**I am requesting any and all additional reports of activities of the dog-handler team, including demonstrations, training of other teams, and any other reports detailing the dog-handler team's activities not specifically related to a crime. More specifically, I am requesting:(a) any and all records, reports, proficiency training records, including both documents and video recordings, which relate to the use of the canine known as "Nitro."**

The response is still the same. According to Sheriff Blankenship, there are no additional reports of activities of the dog-handler team, reports of training of other teams, or any other reports detailing the dog-handler team's activities not specifically related to a crime. There are also no records, reports, or proficiency training records which relate to the use of the canine not specifically related to a crime. There are no videos to Sheriff Blankenship's knowledge except a KRG news video that was aired last year and, although we do not believe it is discoverable under Fed. R. Crim. P. 16 and Rules 116.1(C) and 116.2 of the Local Rules of the United States District Court for the District of Massachusetts, it is certainly publicly available, and I will forward it to you if I can obtain a copy in the near future.

### (4) Crime Scene Reports

There are no crime scene reports written by the Sheriff regarding the stop and search of the defendant.

### (5) News Reports:
**"Any and all news articles, recordings, or videotapes about the Phelps County, Missouri Sheriff Department's canine unit, including Sheriff Blankenship and Nitro"**

Counsel in United States v. Sugar
May 12, 2004
Page 8

The government objects to this request as seeking information that is not currently subject to disclosure under Fed. R. Crim. P. 16 and Rules 116.1(C) and 116.2 of the Local Rules of the United States District Court for the District of Massachusetts, and declines to comply with this request at this time. For the reasons set forth in the Materiality Section above, the government objects to this request as irrelevant, immaterial, and overbroad. First, there is no allegation that something the government released to the press caused prejudice to defendant, which would be the only scenario in which this request would be relevant. See United States v. Leichtfuss, 331 F.Supp. 723, 736-7 (ED Ill. 1971)(Denying request for all copies and distribution lists of any news or press releases or photographs prepared by any agency relating to the defendant because there was no representation that the government may have caused the release of prejudicial publicity). Second, the request is also overbroad and immaterial, as the defendant requests "Any and all news articles, recordings, or videotapes about the Phelps County, Missouri, Sheriff Department's canine unit, including Sheriff Blankenship and Nitro." The defendant does not even limit his request to his case and has articulated no rationale for the need for this material. Third, the information requested is public and is readily available to the defendant who has alleged no impediment to conducting his own Lexis/Nexis or other similar independent search in order to obtain these public materials.

## II. MAY 5, AND MAY 6, 2004 DISCOVERY LETTER RESPONSES

**1. Information regarding the Phelps County, Missouri Sheriff's Department:**

(a) **Names of any drug dogs used by the Phelps County, Missouri Sheriff's Department:**
Nitro and Aras are the drug dogs currently used by Phelps County, Missouri, Sheriff's Department

(b) **Names of any drug dog handlers in the Phelps County, Missouri Sheriff's Department:**
Sheriff Don Blankenship and John Day are the names of the drug dog handlers currently in the Phelps County, Missouri, Sheriff's Department.

Counsel in United States v. Sugar
May 12, 2004
Page 9

(c)   Information regarding motor vehicle stops made by the Phelps County, Missouri Sheriff's Department where no drug dog was called in to assist.

Phelps County Sheriff's Department does not collect or compile data concerning motor vehicle stops made by the Phelps County, Missouri, Sheriff's Department where no drug dog was called in to assist.

(d)   **Information regarding the percentage of motor vehicle stops involving motor vehicles that are not cars or pickup trucks (i.e., vans, delivery trucks, semi tractor-trailers, motor homes, recreational vehicles, etc.)**

Phelps County Sheriff's Department does not collect or compile data regarding the percentage of motor vehicle stops involving motor vehicles that are not cars or pickup trucks (i.e., vans, delivery trucks, semi tractor-trailers, motor homes, recreational vehicles, etc.).

(e)   **Information regarding the percentage of stops made of vehicles with out-of-state (i.e., non-Missouri) license plates.**

Phelps County Sheriff's Department does not collect or compile data regarding the percentage of stops made of vehicles with out-of-state (i.e., non-Missouri) license plates.

(c-e) The government objects to this request as seeking information that is not currently subject to disclosure under Fed. R. Crim. P. 16 and Rules 116.1(C) and 116.2 of the Local Rules of the United States District Court for the District of Massachusetts, and declines to comply with this request at this time. The government also objects to requests 1c-1e as they do not meet the Materiality standard discussed above and are overbroad and irrelevant. The defendant does not even limit his request to his case and has articulated no rationale for the need for this material concerning every investigation or case the Phelps County Sheriff's Office has been involved in.

(f)   **Any and all rough notes of the deputies and/or sheriff of the Phelps County, Missouri Sheriff's Department that interviewed of the defendant and all co-defendants.**

9

Counsel in United States v. Sugar
May 12, 2004
Page 10


You have received all reports of the Phelps County Sheriff's Department and DEA concerning any interviews of the defendant and all co-defendants, and you do not dispute this fact. There are no rough notes of Phelps County Sheriff's Department deputies and/or sheriffs who interviewed the defendant or co-defendants.

### 2. Information regarding the Drug Enforcement Agency:

(a)  **Any and all departmental or organizational policies, rules, rules, directives, memoranda and operating procedures that define or outline the use of written statements and tape recording and video recording of interviews for the Missouri DEA and Boston DEA.**

Phelps County does not have any of the requested materials. As for DEA, the government objects to this request because the requested items are not material and are internal documents as set forth above.

(b)  **Any and all rough notes of the DEA agents that interviewed of the defendant and all co-defendants.**

You have already been provided all the rough notes regarding the arrest and statements of Stark and Sugar. Although it is the government's position that you are not entitled to these notes as they are not discoverable at this time under Fed. R. Crim. P. 16 and Rules 116.1(C) and 116.2 of the Local Rules of the United States District Court for the District of Massachusetts, the government encloses the remaining rough notes of DEA in this case Bates numbers 330-385.

If you have any questions or if you feel I have failed to address any issue, please do not hesitate to contact me at the telephone number below.

Very truly yours,

Cynthia W. Lie
Assistant U.S. Attorney
(617) 748-3183


cc: Filed with Court (w/o encl).