UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA

v.   Criminal No. 03-cr-10362-PBS

CHRISTOPHER SUGAR

**DEFENDANT'S MOTION TO COMPEL DISCOVERY**

Pursuant to Local Rules 116.2 and 116.3 and Rule 16(a)(1)(C), Christopher Sugar moves this Court to order the government to provide him with access to, and copies of, certain information, including evidence, documents and electronic data and records that are material to the preparation of the defendant's defense and exculpatory.  The specific evidence requested consists primarily of training and certification records of the of the canine known as "Nitro" that was used in the search of defendant's vehicle, as well as records regarding the training of Nitro's handler, Sheriff Donald Blankenship.

The requested documents and other evidence are discoverable because they bear directly on the issue of whether probable cause to search the vehicle existed based solely on the dog's alert.

I.   **Prior Discovery Procedures**

A more particularized itemization of the defendants requests are set forth on pages 1 and 2 (paragraphs 1(a) through 1(k)) of defense counsel's May 3, 2004 discovery letter to the prosecutor, and pages 1-2 (paragraphs 1(a) through 1(f) of defense counsel's May 5, 2004

1

discovery letter to the prosecutor. A copy of the May 3, 2004 and May 5, 2004 discovery letters are attached hereto as Exhibits 1 and 2, and made a part of this motion.

In a May 12, 2004 letter to defense counsel (Exhibit 3), the government declined to provide the evidence, documents and information, aside from a certificate from a now-defunct school whose accreditation has never been provided or verified (Exhibit 4). The Government maintains that the defendant has failed to establish the materiality of the requested documents. The parties have conferred and are unable to resolve this particular discovery dispute joined in the letters.

II.     **The Government Has A Duty To Disclose The Requested Records**

The prosecution has a clear duty to disclose, upon request, all evidence favorable to the accused.[1] Brady v. Maryland, 373 U.S. 83, 87 (1963). The duty includes documents or information outside the district if the prosecutor has knowledge of, and access to it. United States v. Bryan, 868 F.2d 1105, 1113 (9th Cir. 1989). Clearly Brady applies to cases in which the government fails to accede to defense requests for disclosure of specific types of exculpatory evidence. Kyles v. Whitley, 514 U.S. 419, 433, 115 S.Ct. 1555, 1565 (1995). The federal judiciary has the "inherent power to require" disclosure of information necessary to the defense. United States v. Nobles, 422 U.S. 225, 231 (1975). The defendant is entitled to discovery of facts that will provide the basis for significant pretrial motions, including motions to suppress. United States v. McElroy, 697 F.2d 459 (2nd Cir. 1982).

---

[1] The Government has responded that some of the information requested by defendant "is public and is readily available to the defendant who has alleged no impediment to conducting his own Lexis/Nexis or other similar independent search in order to obtain these public materials." The Government does not cite to support for this

### III. The Requested Training Records Are Material

The requested evidence and information is material in that it is essential to the presentation of a central aspect of the defense at suppression and trial: that the canine used by the Phelps County Sheriff's Department was not reliable and not properly trained and/or qualified, and therefore there was no probable cause to search the vehicle the defendant was driving on October 22, 2003.

As early as United States v. Race, 529 F.2d 12, 13 (1st Cir. 1976), the First Circuit held that an alert by a trained dog is sufficient to establish probable cause for a search warrant. Since Race, the First Circuit and its sister circuits have held repeatedly that a dog alert, standing alone, is enough to establish probable cause that contraband is present. *See, e.g.,* United States v. Naveda-Colon, 996 F.2d 1337, 1339 (1st Cir. 1993) (Breyer, J.) ("the dog sniff alone provided the agents with sufficient grounds for obtaining a search warrant"); United States v. Kennedy, 131 F.3d 1371, 1378 (10th Cir. 1997); United States v. Berry, 90 F.3d 148, 153 (6th Cir.) (1996); United States v. Williams, 69 F.3d 27, 28 (5th Cir. 1995); United States v. Bans, 3 F.3d 399, 402 (11th Cir. 1993); Karnes v. Skrutski, 62 F.3d 485, 498 (3d Cir. 1995). *But see* United States v. Trayer, 989 F.2d 805, 808 (D.C. Cir. 1990) ("We do not ... hold that [the canine's] alert, on its own, provided the district court with sufficient evidence to support a probable cause determination.").

However, in order for the canine alert to satisfy probable cause doctrine, there must be a showing that the dog is sufficiently reliable. For example, in Race, the Court pointed to the

---

position, nor does it indicate from whence it derives this burden on a criminal defendant, as opposed to a party in a civil suit.

3

"strong foundation of canine reliability and handler expertise" presented by the Government. 529 F.2d at 14. *See also* United States v. Owens, 167 F.3d 739, 749 (1st Cir. 1999); United States v. Sundby, 186 F.3d 873, 876 (8th Cir. 1999) ("A dog's positive indication alone is enough to establish probable cause for the presence of controlled substances if the dog is reliable…."); Berry, 90 F.3d at 153 (in order for an alert to support a probable cause finding, the training and reliability of the dog must be established); Diaz, 25 F.3d at 393-94 (holding that "[f]or a positive dog reaction to support a finding of probable cause, the training and reliability of the dog must be established" and subjecting the dog's alert to expert analysis pursuant to Fed. R. Evid. 703); Lingenfelter, 997 F.2d at 639 ("A canine sniff alone can supply the probable cause necessary for issuing a search warrant if the application establishes the dog's reliability").

This important qualification of the permissive rule regarding the sufficiency of a canine alert to establish probable cause often surfaces in cases, as is evidenced by recitations regarding the dog's training and certification. *See* Owens, 167 F.3d at 740; United States v. de los Santos Ferrer, 999 F.2d 7, 10 (1st Cir. 1993) ("the alert – by a certified narcotics-detecting dog – provided probable cause to detain and ample incentive to question…."); United States v. Maldonado-Espinosa, 767 F.Supp. 1176, 1178 (D.P.R. 1991) (finding probable cause for search of luggage after alert by dog who, *inter alia*, was "certified for accuracy on an annual basis"), *aff'd* 968 F.2d at 102 (find that that probable cause for search properly found where the alert was by a dog that was "accuracy-certified" and "fully trained" in drug detection); United States v. Colon, 845 F.Supp. 923, 928 (D.P.R. 1994) (finding that where the record did not disclose the reliability of the dog responsible for the critical alert to box on airport conveyor belt, the court could not determine whether probable cause for the subsequent search of the box was present.). *See also* United States v. Wood, 915 F.Supp. 1126, 1136 (D. Kan. 1996) (reliability established

by training and annual certification); 1 Wayne R. LaFave, *Search and Seizure*, § 2.2(f) (3rd ed. 1996) (sufficiency of trained dog's alert turns upon the reliability of the particular dog.).

It is well recognized that the accuracy record of a narcotics dog, based on the dog handler's usage reports, is one of the most important factors with regard to a particular canine's reliability. *See* United States v. Diaz, 25 F.3d 392, 394 (6th Cir. 1994) ("For a positive dog reaction to support a determination of probable cause, the training reliability must be established"); United States v. Ludwig, 10 F.3d 1523, 1528 (10th Cir. 1998) ("a dog alert may not give probable cause if a particular dog had a poor accuracy record…."). *See also* United States v. Florez, 871 F.Supp. 1411, 1423 (D.N.M. 1994) (when a dog's detection accuracy is credibly challenged, evidence of the dog alerting is insufficient alone to establish probable cause absent documentation of the dog's accuracy record, or corroborating evidence of the presence of drugs); LaFave, *supra,* § 2.2(f) (quoting Comment, 13 San Diego L. Rev. 410, 416-17 (1976) (discussing factors to support a canine's reliability, stating: "the track record of the dog up until the search (emphasis must be placed on the amount of false alerts or mistakes the dog has furnished.")).

The defendant maintains that such a showing is not present. The government either cannot obtain the records because they do not exist,[2] in which case the defendant's motion to suppress must be allowed, or the defendant must be granted discovery in order to press his suppression argument. The Government's response makes clear that it believes the inquiry ends with an undocumented assertion of the dog's reliability. The Government also makes a tautological argument that, because drugs were recovered in the instant case after the dog alerted, then the dog must be reliable. This ignores the fact that the dog's reliability must be established

---

[2] According to the Government's response of May 12, 2004, all of Nitro's training records have been destroyed or were never generated.

*before* it is used to establish probable cause to search. A record of Nitro's false alert rate, i.e., instances where it alerted but no drugs were found, is directly material to the issue of his reliability.

### IV.  The Defendant Has Reason to Believe That The Requested Records Exist

Additionally, the defendant has requested information regarding motor vehicle stops made by the Phelps County Sheriff's Department where no drug dog was called in to assist. The Government has responded that the Phelps County Sheriff's Department does not collect or compile this data. However, defense counsel has determined that such data is collected by the Phelps County Sheriff's Department, as required by Missouri state law (Section 590.650, RSMo (2000)) (see Exhibit 5).

Defendant has also requested copies of videotapes of the dog-handler team, or the training of other teams, and videotapes depicting traffic stops in which Nitro was used. The Government has responded that, according to Sheriff Blankenship, no such videos exist. Defense counsel has determined that Sheriff Blankenship is featured on a videotape from Hornbecks Training Center in Springfield, Missouri entitled "Puppy Training and Imprinting"[3] (see Exhibit 6). Additionally, Hornbecks sells a videotape entitled "Hidden Compartments of Drug Traffickers Volume 1," which was filmed on Interstate 44 in Missouri, the same highway where the defendant was stopped and searched (see Exhibit 7).

---

[3] The defendant notes that the videotape features "Sheriff Donald Blankenship with his fully trained and certified Golden Retriever female, Spitfire." The Government, in its response to defendant's request for the "names of any drug dogs used by the Phelps County, Missouri Sheriff's Department," stated that the dogs used by the Phelps County Sheriff's Department are named Nitro and Aras.

## **CONCLUSION**

For all the reasons cited above, defendant respectfully requests that this Court order the Government to provide the requested discovery.

Respectfully submitted,
Christopher Sugar
By his attorney

_____
Mark W. Shea
BBO No. 558319
47 Third Street, Suite 201
Cambridge MA  02141-1265
617.577.8722