UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | FILED |
| ) | IN CLERKS OFFICE |
| V. ) | Criminal No. 03-CR-10362 (PBS) |
| CHRISTOPHER SUGAR, ) | |
| SEAN D. STARK, ) | 2004 MAY 26  P 4: 16 |

**GOVERNMENT'S OPPOSITION TO DEFENDANTS STARK AND SUGAR'S MOTIONS TO SUPPRESS AND SUGAR'S SUPPLEMENTAL MEMORANDUM**

U.S. DISTRICT COURT
DISTRICT OF MASS

A. ADDITIONAL EVENTS, INCLUDING THE COMPLETION OF THE RECORDS CHECK, DID NOT CHANGE THE TERRY STOP INTO AN ARREST

The Terry exception to the traditional rule disallowing detentions without probable cause has been widened in the last decade to encompass other circumstances where officers may make brief investigative stops or seizures of individuals upon a reasonable suspicion that they may have committed, are committing, or are about to commit a crime. No mechanical checklist has been assembled to facilitate distinguishing between such investigative stops, on the one hand, and those detentions, on the other, which though not technical, formal arrests are the "equivalent of an arrest" and therefore require probable cause.

United States v. Quinn, 815 F.2d 153, 156-57 (1st Cir. 1987) (holding 20-25 minute period waiting for canine was not excessive period of time to interrogate during Terry stop).

United States v. Hornbecker, 316 F.3d 40 (1st Cir. 2003), is on point. The Hornbecker defendant was pulled over for traffic violations. The Trooper found it suspicious that defendant was driving from southern California to New Hampshire to sell the Volkswagen being driven, California was a drug source state, and the Volkswagen had an unusual body style that looked as though it contained a difficult-to-access area behind the cab. Id. at 41-42. The Trooper called to check the defendant's license, registration, and criminal history. Id. at 42. "Almost immediately" after requesting a canine, the Trooper learned that the defendant's license, registration, and history was in order. Id. Instead of sending defendant on his way, the Trooper kept asking the defendant about the car until the drug sniffing dog arrived. Id. The defendant later consented but the

1

First Circuit upheld this Terry stop as reasonable, specifically condoning the continued Terry stop <u>after</u> the records check was completed, finding the defendant's reason for traveling suspicious, coupled with the travel from a known drug source area and the unusual vehicle "sufficient to satisfy the demands of Terry." <u>Id.</u> at 47-48.

In the instant case, the following similar factors demonstrate reasonable suspicion that defendants were committing a crime such that even the period after the records check did not convert the Terry stop into an arrest:

> (1) passenger Stark was unusually nervous and his hands were shaking, which Deputy Crivello noted is particularly unusual for the non-driver who is not going to get a ticket;
> (2) passenger Stark kept dominating the conversation and offered what seemed to the Deputy as a prepared story about what they were going;
> (3) the story that the two were driving from Arizona to Vermont just to ride bicycles was suspicious;[1]
> (4) Stark tried to hide the CB radio when the Deputy asked for their registration;
> (5) Arizona is a source drug state and Interstate 44 is a known drug transport highway[2]; and
> (6) Stark approached the patrol car and peppered the Deputy with questions.

<u>See also</u> <u>United States v. Sowers</u>, 136 F.3d 24, 27-28 (1st Cir. 1998) (passenger's lack of identification papers, nervousness of driver and passenger, and fact that driver and passenger told conflicting stories sufficient to prolong their detention); <u>United States v. Stanly</u>, 915 F.2d 54, 55-57 (1st Cir. 1990) (fact that defendant was alone in car late after midnight in area frequently used for illegal drug activities, was leaning over the vehicle's illuminated center console, and appeared to try to hide

---

[1] <u>See</u> <u>United States v. Kopp</u>, 45 F.3d 1450, 1454 (10th Cir. 1995) (finding defendants' unusual travel plans a factor giving rise to reasonable suspicion of criminal activity).

[2] <u>See</u> <u>United States v. Evans</u>, 282 F.3d 451, 455 (7th Cir. 2002) (finding reasonable suspicion where, among other factors, package containing narcotics came from address in Southern California, "a known source area for illegal drugs"); <u>United States v. $141,770.00 in United States Currency</u>, 157 F.3d 600, 604 (8th Cir. 1998) (probable cause found for forfeiture of money seized from camper where among other factors "the camper had originated in California, a drug source state").

2

something when he saw officer sufficient to warrant detention).

**B. THE SEARCH OF THE RV WAS SUPPORTED BY PROBABLE CAUSE**

Federal law is clear that an alert from a trained and certified narcotics dog ("Nitro") establishes probable cause to search. See, e.g., United States v. de los Santos Ferrer, 999 F.2d 7, 10 (1st Cir. 1993); United States v. Maldonado-Espinosa, 767 F. Supp. 1176, 1188 (D.P.R. 1991), aff'd, 968 F.2d 101 (1st Cir. 1992). Indeed, simply reciting that a dog is "trained" may by itself permit the inference that the dog "had attained a high degree of proficiency in detecting the scent of narcotics." United States v. Meyer, 536 F.2d 963, 966 (1st Cir. 1976).

Nitro ably alerted to the marijuana and has, in fact, been certified, as evidenced by the certificate previously produced to defense counsel. There have been no complaints, written or oral, made regarding Nitro's reliability. It is anticipated that Sheriff Blankenship will testify as well to Nitro's reliability as witnessed by the Sheriff in the approximately four years that he has worked with Nitro, although this level of detail and perfect reliability is not required to establish probable cause. See United States v. Owens, 167 F.3d 739, 749 (1st Cir.), cert. denied, 528 U.S. 894 (1999) (affirming District Court's conclusion that dog, who was certified at the time of the questioned stop, was reliable, despite fact that dog had failed to pass two earlier certification tests); See also U.S. v. Sklar, 721 F.Supp. 7, 12 (D. Mass. 1989) (Ponsor, M.J.).

Dated: May 26, 2004

Respectfully submitted,
MICHAEL J. SULLIVAN
United States Attorney
By:

Cynthia W. Lie
Assistant U.S. Attorney

I hereby certify that a true copy of the above document was served upon (each party appearing pro se and) the attorney of record for each other party by mail on
_____
5/26/04
Assistant U.S. Attorney

3