UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA )
) Criminal No.
) 03-CR-10362 (RGS)
)
)
V. )
CHRISTOPHER SUGAR, )
SEAN D. STARK, )
TREVOR ROYCE TEAGUE, )
ANIBAL TORRES, )
    a/k/a PACE; and )
FABIAN A. RUIZ, )
)

FILED
IN CLERK'S OFFICE

2004 JUN -8  P 3: 58

U.S. DISTRICT COURT
DISTRICT OF MASS.

## GOVERNMENT'S OPPOSITION TO DEFENDANT SUGAR'S MOTION TO COMPEL DISCOVERY AND STARK'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF HIS MOTION TO SUPPRESS STARK AND SUGAR'S MOTIONS TO SUPPRESS

The United States of America, by its attorney, Michael J. Sullivan, United States Attorney for the District of Massachusetts, respectfully submits this memorandum in opposition to two motions: (1) defendant Stark's Motion to Compel and (2) defendant Sugar's Supplemental Motion to Suppress.

### STARK'S MOTION TO COMPEL

I.  GOVERNMENT HAS PROVIDED ALL DISCOVERY

The government has turned over all discovery pursuant to Fed. R. Crim. P. 16 and Rules 116.1(C) and 116.2 of the Local Rules of the United States District Court for the District of Massachusetts in the possession and control of the government. Obviously, Phelps County is not under the control of the federal

government. However, the federal government has not insisted that defendant subpoena Phelps County directly. The government has cooperated in obtaining the requested materials from Phelps County and sending these materials forthwith to the defendant. Phelps County has been cooperative in turning over all discovery requested by defendant Stark that exists and continues to cooperate at the federal government's request.[1] However, defendant seems to imply in his Motion to Compel that Phelps County is not being forthright with the U.S. Attorney's Office in turning over discovery. Should this be the case, although we do not feel it is, defendant Stark should then subpoena Phelps County directly.

## II. DEFENDANT HAS BEEN PROVIDED ALL TRAINING RECORDS

Defendant disingenuously argues that the government has not turned over the training records he has requested. The government has in fact turned over all training records that exist. Defendant is simply unhappy that Phelps County does not

---

[1] Defendant wrongly and improperly states that the government "declined to provide the evidence, documents and information, aside from a certificate from a now-defunct school whose accreditation has never been provided or verified." As the May 12, 2004, letter from the government is clear, as to this request, the government does not decline to produce these records. The govenrnment has in fact turned over all records concerning Nitro's training and has given the name of the defunct school, Lead Canine, in Lincoln, Arkansas, which defendant is free to follow up with on his own. The government has no control over the private organization that was Lead Canine and can only rely on the representation from them that the documents have been destroyed.

2

keep written training records of the canines. This is obviously a factor that will go to the weight of the evidence as to whether the canine Nitro is deemed reliable. Defendant Sugar also erroneously states that the "Government's response makes clear that it believes the inquiry ends with an undocumented assertion of the dog's reliability." (Mot. To Compel, pg. 5). As the defendant knows from the government's letter of May 12, 2004, attached as Exhibit A, the government expects Sheriff Blankenship to testify to the reliability of the canine, Nitro. At that time, defendant will have the opportunity to cross-examine the Sheriff concerning the reliability of Nitro and any follow-up questions he may have concerning the lack of training records.

Furthermore, federal law is clear that an alert from a trained and certified narcotics dog establishes probable cause to search. See, e.g., United States v. de los Santos Ferrer, 999 F.2d 7, 10 (1st Cir. 1993); United States v. Maldonado-Espinosa, 767 F. Supp. 1176, 1188 (D. P.R. 1991), aff'd, 968 F.2d 101 (1st Cir. 1992). Indeed, simply reciting that a dog is "trained" may by itself permit the inference that the dog "had attained a high degree of proficiency in detecting the scent of narcotics." United States v. Meyer, 536 F.2d 963, 966 (1st Cir. 1976). Nitro has in fact been certified as evidenced by the certificate already produced to defendants. The government's letter of May 12, 2004, has as already described Nitro's training, including

techniques, rewards, training aids, final responses etc.

Thus, defendants have received all the records discoverable at this time. If defendant Stark does not believe Phelps County has been forthcoming, he should subpoena the County directly.

### III. DEFENDANT'S REQUEST FOR A NUMBER OF ITEMS ARE NOT COMPILED BY PHELPS COUNTY AND ARE IMMATERIAL, OVERBROAD, AND NOT RELEVANT

Defendant Stark fails to address his numerous discovery requests with any specificity, simply asserting in a conclusory fashion that all the documents he seeks are "material" to the canine stop at hand. The government refers to and incorporates to this opposition, its letter of May 12, 2004, attached as Exhibit A. Specifically, the following include defendant's requests that Phelps County does not collect or compile:

- "Any and all news articles, recordings, or videotapes about the Phelps County, Missouri Sheriff Department's canine unit, including Sheriff Blankenship and Nitro" (also in the public domain)
- "Information regarding the percentage of motor vehicle stops involving motor vehicles that are not cars or pickup trucks (i.e., vans, delivery trucks, semi tractor-trailers, motor homes, recreational vehicles, etc.)"
- "Information regarding the percentage of stops made of vehicles with out-of-state (i.e., non-Missouri) license plates."
- "Any and all reports or documentation describing the number of occasions where deputies stopped vehicles on the highways or other public ways for alleged traffic violations and "Nitro" was used to obtain probable cause for a search of the vehicle."

If this data was collected and compiled by Phelps County, the County would gladly produce it. As defense counsel has been

told, Phelps County does not keep reports categorized by whether or not a canine was involved or whether or not an RV was involved and the like. Phelps County is a small sheriff's department and the burden on the County to review and categorize every misdemeanor and felony report that Phelps County has written since the beginning of time would be enormous. See e.g. United States v. Wilkerson, 189 F.R.D. 14, 16 (D.Mass. 1999) (denying defendant's request for all written records and documentation relating to specimen processing and complete technical procedures relating to all tests conducted on the specimens); United States v. Gaertner, 519 F.Supp. 585, 594 (E.D. Wis. 1981) (denying defendant's request for results performed by chemist in other cases because they fail the materiality requirement and are not within ambit of Rule 16).

Defense counsel will moreover not consent to a more limited time-frame, specifically around the time of the traffic stop. Defense counsel's response is that Phelps County should then hire more people to address his discovery requests. Obviously, this is something the federal government cannot impose on Phelps County. Therefore, should the Court require Phelps County to turn over any materials that require them to review every misdemeanor and felony report written and to compile this information, the government requests that the Court tailor the timeframe to that near the October 2003 stop at issue.

However, the government does object to the production of these materials as immaterial, overbroad, and irrelevant. These pending requests are for documentation that is <u>not related</u> to the traffic stop at issue, much of this information requested does not even involve "Nitro".

Rule 16(a)(1)(C) states that the government shall permit the defendant to inspect and copy materials "which are within the possession, custody or control of the government, and which are **material to the preparation of the defendant's defense** or are intended for use by the government as evidence in chief at the trial, or were obtained from or belong to the defendant." Courts are clear that documents are "material" if there is a "strong indication" that they will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment and rebuttal. <u>United States v. LaRouche Campaign</u>, 695 F.Supp. 1290, 1306 (D.Mass 1988). Defendant must make a "prima facie showing of materiality" to be discoverable under FRCP Rule 16. <u>United States v. Pedro Carrasquillo-Plaza</u>, 873 F.2d 10, 12 (1st Cir. 1989). A blanket request is insufficient. See <u>Id.</u> at 13; See also <u>United States v. Cadet</u>, 727 F.2d 1453, 1466 (9th Cir. 1984) ("A general description of the materials sought or a conclusory argument as to their materiality is insufficient to satisfy the requirements of Rule 16(a)(1)(C)"). See E.g., <u>U.S. v. Lloyd</u>, 992 F.2d 348, 350

(D.D.C. 1993) (To show materiality under Rule 16, a "defendant must demonstrate that the requested evidence bears some abstract logical relationship to the issues in the case.... There must be some indication that the pretrial disclosure of the disputed evidence would [enable] the defendant significantly to alter the quantum of proof in his favor"). See generally United States v. Rosario-Peralta, 175 F.3d 48 (1st Cir. 1999) ("Information is 'material' if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different").

> The documents at issue must "play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony or assisting impeachment or rebuttal.".... When analyzing materiality, a court should focus first on the indictment which sets out the issues to which the defendant's theory of the case must respond....An "abstract logical relationship to the issues in the case" is not, however, sufficient to force the production of discovery under Rule 16....Materiality is, to some degree, a sliding scale; when the requested documents are only tangentially relevant, the court may consider other factors, such as the burden on the government that production would entail or the national security interests at stake, in deciding the issue materiality.... It may also be relevant that the defendant can obtain the desired information from other sources.

United States v. George, 786 F.Supp. 56, 58-59 (D.D.C. 1992). These requests clearly fail the "materiality" requirement of Rule 16, and thus the defendant's motion to compel should be denied.

**IV.  DEFENSE COUNSEL HAS NO VALID REASON TO BELIEVE THAT THE**

**REQUESTED DOCUMENTS EXIST**

Phelps County has maintained that it does not collect and compile a number of categories of documents requested, as discussed above. This is supported by defendant's own contentions. However, defendant disengenuously argues that Phelps County has these records because "defense counsel has determined" that such data is collected. As defense counsel demonstrated at the recent evidentiary hearings, the Missouri Attorney General and **NOT** Phelps County collects and compiles data for the purposes of Racial Profiling statistics, including the number of drug dog alerts. As defense counsel also demonstrated, the number of drug dog alerts reported were as follows, according the Attorney General:

    Year 2000        0
    Year 2001        0
    Year 2002        1

This supports Phelps County's assertion that they do not collect and maintain the data, since obviously the number of dog alerts is certainly not zero for 2000 and 2001, as Deputy Crivello has already testified as such during the suppression hearings. If Phelps County was collecting and compiling this data, the numbers would certainly be greater than zero or one. However, the government has requested that Sheriff Blankenship check their records again to determine if they have maintained

any of the reporting documents to the Attorney General. He has stated that he will check again, but that Phelps County Sheriff's Office does not retain the reports written by the actual Deputy who does the stop and writes a report to be sent to the Attorney General's Office. This report apparently is sent to the Attorney General, where defendant may obviously subpoena the records directly.

Defendant also refers to a "Puppy Training ad Imprinting" video and another video involving Interstate 44 in Missouri, the highway where the defendant was stopped and searched. Defendant does not state that this video concerning Interstate 44 involves any dog handler teams or Nitro, so defendant's point as to this video is unknown other than to muddy the discovery waters with red herrings. The "Puppy Training and Imprinting" video is one that defendant has not produced to the government. The defendant makes no assertion that this video has anything to do with "Nitro", which is what defendant requested in his discovery. Moreover, the government again objects to these requests as immaterial, overbroad, and not relevant.

### SUGAR'S SUPPLEMENTAL MOTION TO SUPPRESS

**I. THERE WAS REASONABLE SUSPICION OF A TRAFFIC VIOLATION**

As defendant Stark admits in his supplemental memorandum, Deputy Crivello observed the RV's rear tire crossing over the white line or "fog line" three times. The Deputy also testified

9

that the entire double rear tire went completely over the white line and onto the shoulder of the road the third time. This satisfies any reasonable suspicion or even probable cause that a traffic violation occurred; here three traffic violations occurred before Deputy Crivello pulled the RV over.

Defendant Stark attempts to contort the plain meaning of the traffic statute by implying that crossing the line three times with the entire double rear tire crossing over the third time into the shoulder of the road is not sufficient to satisfy reasonable suspicion of a traffic stop. Defendant Stark provides no case law in support of this novel theory. Obviously, anytime a car and certainly a large RV swings over the white line and onto the shoulder of the road, this endangers any pedestrian or car pulled over due to mechanical problems. Defendant Stark also appears to allege that there was no legitimate traffic stop that since Deputy Crivello did not write the ticket until after the drug dog arrived. Both defendants testified during the suppression hearings that the motor vehicle often swerved unintentionally and that it was entirely possible that it did during the time-frame at issue.

Moreover, as Deputy Crivello testified during the first phase of suppression hearings, during the time he awaited the canine to arrive, he was busy calling in the records check and more significantly dealing with defendant Stark's constant stream

of questions. As Deputy Crivello also testified, while he and defendant Sugar were in the patrol car running the records check and leaving Stark at the RV, Stark brashly approached the patrol unit and began peppering Deputy Crivello with questions and continuing to interrupt the process with Stark's dialogue about getting pulled over in Mexico, etc.

Deputy Crivello clearly had reasonable suspicion and even probable cause to believe that a traffic violation had occurred and defendant's motion should be denied.

## CONCLUSION

For the reasons set forth above, the government respectfully requests that the Court deny the defendant Sugar's Motion to Compel Discovery and the defendant Stark's Motion to Suppress.

Dated: June 8, 2004

> Respectfully submitted,
> MICHAEL J. SULLIVAN
> United States Attorney
>
> By: _____
> Cynthia W. Lie
> Assistant U.S. Attorney

I hereby certify that a true copy of the above document was served upon (each party appearing pro se and) the attorney of record for each other party by mail on Sugar & Stark

_____  6/9/07
Assistant U.S. Attorney

11